UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VIKTORIIA GLUSHCHENKO,<br><br>                       Petitioner,<br><br>   v.<br><br>BRUCE SCOTT, *et al.*,<br><br>                       Respondents. | Case No. C26-449-MLP<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

       Petitioner Viktoriia Glushchenko is detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Petitioner, through counsel, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which she asserts her prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution. (Dkt. # 1.) Respondents have filed a return (dkt. # 6), together with the supporting declaration of Respondents' counsel, Jordan Steveson (dkt. # 7). Petitioner has filed a traverse in response to the return. (Dkt. # 8.) The Court, having considered the parties' submissions and the governing law, GRANTS the petition and ORDERS Respondents to provide Petitioner with a bond hearing within fourteen days of the date of this Order.

I.  BACKGROUND

Petitioner is a native of Kazakhstan and citizen of Russia who entered the United States with her husband on May 21, 2024, at the Calexico West Port of Entry. (Steveson Decl., Ex. A.) Both came to the United States seeking asylum. (*See* dkt. # 1 at 6.) Petitioner was detained and placed in expedited removal – credible fear proceedings under 8 U.S.C. § 1225(b)(1). (*See id.*, Append. A; Steveson Decl., Ex. A.) After being detained at the border for five days, Petitioner was transferred to the Richwood Corrections Center in Louisiana, and then to the South Louisiana ICE Processing Center. (*See* dkt. # 1, Append. C at 1.) A credible fear interview was completed on June 21, 2024, and Petitioner received a positive fear determination along with an automatic parole request. (*See id.*)

On June 25, 2024, Petitioner was issued a Notice to Appear ("NTA"), which charged her with being removable under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Dkt. # 1, Append. A; Steveson Decl., Ex. A.). On July 1, 2024, Petitioner was denied discretionary parole on the grounds that she had not established to ICE's satisfaction that she was not a flight risk. (Dkt. # 1, Append. D.) On August 14, 2024, Petitioner appeared for a hearing before an immigration judge ("IJ") at which she admitted the factual allegations contained in the NTA and conceded the charge of inadmissibility, and the IJ thereafter sustained the charge in the NTA. (*Id.*, Append. B at 2.)

On August 25, 2024, Petitioner filed an application for asylum which was based on her family membership to her husband. (Dkt. # 1 at 6.) Petitioner was also included in her husband's asylum application. (*See id.*, Append. B.) On October 23, 2024, an IJ granted the asylum application filed by Petitioner's husband. (*See id.*, Append. B at 2.) However, the Department of Homeland Security ("DHS") appealed the IJ's decision to the Board of Immigration Appeals

("BIA") and, on April 30, 2025, the BIA sustained the appeal and remanded the case. (*See id.*) Following remand, an IJ granted a motion to consolidate Petitioner's asylum case with that of her husband. (*Id.*, Append. B at 1.)

A hearing was held on the remanded application for relief from removal on July 9, 2025, and on July 29, 2025, an IJ issued a decision denying all relief to Petitioner and her husband and ordering they both be removed to Russia. (Dkt. # 1, Append. B at 2, 16.) On August 19, 2025, Petitioner and her husband, who were by then both confined at NWIPC, filed an appeal of the IJ's decision with the BIA. (*See id.*, Append. B at 21-24 (dkt. # 1-1 at 29-32); *see also* Steveson Decl., Ex. C.) The BIA issued a briefing schedule on November 14, 2025, directing that any briefs be filed by December 5, 2025. (Steveson Decl., Ex. D.) The appeal remains pending at this time.

## II. DISCUSSION

### A. Statutory Framework and Legal Standards

Petitioner is detained under 8 U.S.C. § 1225(b)(1)(B) as an applicant for admission. (*See* dkt. # 6 at 1.) Noncitizens are considered "applicants for admission" to the United States when they "arrive" in the United States or are "present" in this country but have "not been admitted." 8 U.S.C. § 1225(a)(1). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id.*

"Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an IJ or review of the removal order." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1111-12 (W.D. Wash. 2019) (citing 8 U.S.C. § 1225(b)(1)(A)(i)). However, where a noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," they must be referred for an interview with an asylum officer. *Id*. (quoting 8 U.S.C. § 1225(b)(1)(A)(ii); citing 8 C.F.R. § 208.30(d)). If the officer finds a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." *Id*. (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).

Both § 1225(b)(1) and § 1225(b)(2) mandate detention of noncitizens for the entirety of the applicable proceedings. *Jennings*, 583 U.S. at 302. And the "statute does not impose 'any limit on the length of detention' pending a decision on the asylum application and does not authorize bond hearings or release on bond." *Banda*, 385 F. Supp. 3d at 1112 (quoting *Jennings*, 583 U.S. at 296). However, both the Supreme Court and Ninth Circuit have "grappled . . . with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Robbins*, 804 F.3d 1060, 1067 (9th Cir. 2015) (quoted source omitted) (discussing, *inter alia*, *Zadvydas v. Davis*, 533 U.S. 678 (2001), *Demore v. Kim*, 538 U.S. 510 (2003), and *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005))*, rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018). *See also Toktosunov v. Wamsley*, 2025 WL 3492858, at *2-4 (W.D. Wash. Dec. 5, 2025) (discussing case law).

In *Jennings*, the Supreme Court held that § 1225(b) "unambiguously authorizes detention pending resolution of removal proceedings and does not plausibly suggest a 6-month limitation or periodic bond hearings." *Banda*, 385 F. Supp. 3d at 1115 (citing *Jennings*, 583 U.S. at 297,

303). While *Jennings* declined to address whether the Constitution places limits on prolonged detention under the INA, *see* 583 U.S. at 312, the Ninth Circuit post-*Jennings* expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). Moreover, "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will – at some point – violate the right to due process." *Maliwat v. Scott*, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (quoting *Banda*, 385 F. Supp. 3d at 1116).

Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention. *See Banda*, 385 F. Supp. 3d at 1106. This Court applies the "*Banda*" test in determining whether a noncitizen's detention under § 1225(b) violates due process. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *3; *Hong v. Mayorkas*, 2022 WL 1078627, at *4-5 (W.D. Wash. Apr. 11, 2022).

In *Banda*, the Court found "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process." *Banda*, 385 F. Supp. 3d at 1106, 1117. The Court declined to adopt a rule that detention became unreasonably prolonged at six months, explaining that, pursuant to *Zadvydas*, "at six months, the burden is on the detainee – not the government – to establish a basis for release[,]" and found such a rule would be "inconsistent with the fact-dependent nature of the constitutional question before the Court, namely whether petitioner's prolonged detention has become unreasonable." *Id*. at 1117 (citing *Zadvydas*, 533 U.S. at 701). The Court, instead, adopted a multi-factor test to apply in making the determination of whether § 1225(b) detention has become unreasonable, considering: "(1) the total length of detention to

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 5

date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id*. at 1106 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)).

**B.   Application of the *Banda* Test**

The parties acknowledge this Court's utilization of the *Banda* test, and the Court will therefore apply that test to determine if Petitioner's continued detention without a bond hearing is justified. The Court will thereafter consider the relief requested by Petitioner.

   1.   *Length of Detention*

The first factor, the length of detention to date, is the most important one. *Banda*, 385 F. Supp. 3d at 1118. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022) (citing cases). As of the date of this Order, Petitioner has been detained by ICE for over 21 months, and Respondents acknowledge that this factor favors Petitioner. (*See* dkt. # 6 at 5.) Respondents' concession is sensible, as Petitioner's detention has reached the length of what this Court typically finds unreasonable. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *4 (citing cases finding periods of detention ranging from 11 to 30 months to favor the detainee; finding same for a petitioner detained for nearly 12 months). *See also Toktosunov*, 2025 WL 3492858, at *4 (finding 16 months of detention favored detainee); *Banda*, 385 F. Supp. at 1118-19 (finding approximate 17-month detention strongly favored detainee). The Court finds this factor heavily favors Petitioner.

## 2. *Likely Duration of Future Detention*

Under the second *Banda* factor, the Court considers how long the petitioner's detention is likely to continue absent judicial intervention, *i.e.,* "the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 119 (quoting *Jamal A.*, 358 F. Supp. 3d at 859). Petitioner argues that the second factor favors her as well because the civil immigration appeals process is likely to continue for a substantial period of time. (*See* dkt. # 1 at 15-16.) Petitioner notes that BIA appeals take many months to resolve, and she asserts that if the appeal is not resolved in her favor, she will almost certainly file a petition for review and motion to stay removal with the Ninth Circuit which "will all but guarantee" she will remain detained for many more months, and perhaps years. (*Id.* at 16.)

In response, Respondents note that the BIA completed the prior appeal involving Petitioner's asylum application in approximately five months, and they assert that if the current pending appeal is resolved in a similar timeframe, "a decision should be forthcoming in days or weeks." (Dkt. # 6 at 5.) Respondents further assert that, to the extent Petitioner asks the Court to include a petition for review to the Ninth Circuit in the length of her anticipated future detention, this would require the Court to speculate that Petitioner will lose the pending BIA appeal. (*Id.*) Respondents argue that this factor favors them or is, at worst, neutral. (*Id.*)

Petitioner points out in her traverse that regardless of the outcome of her BIA appeal, her case will likely proceed to the Ninth Circuit because either the BIA will dismiss her appeal and she will file a petition for review or it will grant her appeal in which case the government is likely to appeal to the Ninth Circuit. (*See* dkt. # 8 at 6.) Petitioner maintains that any appeal to the Ninth Circuit would not likely be scheduled for oral argument until a year or more after it is filed. (*Id.*) While Petitioner's numbers are slightly off, she is correct that any appeal to the Ninth

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 7

Circuit would likely be a lengthy process. According to the Ninth Circuit's public website, oral argument in a civil case may not be set for 6 to 12 months from the time a notice of appeal is filed, and cases are typically decided within 3 to 12 months of oral argument. *See* U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, www.ca9.uscourts.gov/content/faq.php (last accessed Mar. 5, 2026).

While the Court agrees that the effect of any appeal to the Ninth Circuit on Petitioner's length of detention is speculative at this point, the scenario Petitioner lays out in her traverse is quite plausible. The Court thus finds that this factor favors Petitioner, albeit only slightly.

        3.      *Conditions of Detention*

Under the third *Banda* Factor, the Court considers the conditions of Petitioner's detention at the facility where she is currently detained. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger [her] argument that [s]he is entitled to a bond hearing." *Banda*, 385 F. Supp. at 1119 (quoted source omitted).

Petitioner argues that the third factor favors her because conditions at NWIPC are substantially similar to, if not worse than, conditions in criminal detention facilities throughout the United States. (*See* dkt. # 1 at 17.) In a declaration attached to her petition, Petitioner avers that her prolonged detention "has a had a serious negative impact on [her] physical and mental health." (*Id.*, Append. C at 2.) Petitioner describes crowded living conditions, lights that are on 24 hours a day, cold showers, poor drinking water, inconsistent and delayed mealtimes, nutritionally insufficient meals, inadequate medical care, and low staffing levels which cause Petitioner to feel unsafe. (*See id.*, Append. C at 2-4.)

Respondents acknowledge the third factor in their return but provide minimal response. Respondents assert that Petitioner has admitted she is able to access medical care and is merely

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 8

unhappy with the results. (Dkt. # 6 at 5.) Respondents also claim, without elaboration, that medical records Petitioner produced in conjunction with her petition show medical personnel are appropriately treating Petitioner for the concerns she reports to them. (*See id.* at 3 n.2, 5.) Respondents do not address any of the other challenged conditions.

Petitioner's declaration supports the conclusion that conditions at NWIPC are substantially similar to those found in criminal detention facilities. This conclusion is consistent with opinions issued in prior cases in this District in which judges have found that conditions at NWIPC are "similar . . . to those in many prisons and jails." *Maliwat*, 2025 WL 2256711, at *6 (citing *Doe v. Bostock*, 2024 WL 3291033, at *11 (W.D. Wash. March 29, 2024); *Rahman v. Garland*, 2025 WL 1920341, at *4 (W.D. Wash. June 26, 2025)); *see also Toktosunov*, 2025 WL 3492858, at *5. The Court finds the third factor also heavily favors Petitioner.

### 4. *Delays in the Removal Proceedings Caused by Petitioner*

Under the fourth *Banda* factor, the Court considers delays in the removal proceedings caused by the Petitioner. *Banda*, 385 F. Supp. 3d at 1119. Petitioner asserts that this factor favors her as well because she has requested only one brief continuance during the pendency of her removal proceedings and has otherwise sought only to rigorously pursue remedies available to her in the removal process. (Dkt. # 1 at 19.) The record supports the conclusion that Petitioner has not caused any undue delay in this case, and Respondents do not argue to the contrary. (*See* dkt. # 6 at 5.) This conclusion, however, does not mean the factor should be weighed in Petitioner's favor. The Court finds this factor is neutral. *See, e.g., Toktosunov*, 2025 WL 3492858, at *5.

### 5. *Delays in the Removal Proceedings Caused by Respondents*

Under the fifth factor, the Court "considers the nature and extent of any delays in the removal proceedings caused by the government." *Banda*, 385 F. Supp. at 1120. Petitioner argues that this factor favors her because her lengthy detention to date has largely been caused by "overcrowded dockets." (Dkt. # 1 at 20.) Petitioner notes, in particular, that her final removal hearing did not take place until she had already been detained for over a year, and that it was continued twice by the immigration court because of scheduling issues involving the IJ's calendar. (*See id.*, Append. C at 1.) Petitioner correctly notes that delays caused by overcrowded dockets are generally attributable to the government. *See Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 923 (W. D. Wash. Jan. 17, 2020) ("[T]he record reflects that delay in this case is a product of the BIA's and Ninth Circuit's 'crowded dockets,' which courts typically attribute to the Government—not the Petitioner.") (citing *Martinez v. Clark*, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019)).

Respondents argue that the government has not delayed removal (dkt. # 6 at 5) and, indeed, the record does not reflect any intentionally dilatory behavior on the part of the government. However, the record does reflect a delay of a number of months which was apparently attributable to scheduling conflicts in the immigration court and, thus, attributable to the government. (*See* dkt. # 1 at 7, Append. C at 1-2.) The Court finds this factor slightly favors Petitioner.

### 6. *Likelihood Removal Proceedings Will Result in Final Order of Removal*

Finally, under the sixth *Banda* factor, the Court considers "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (quoted

source omitted). The Court, in other words, considers whether the petitioner has asserted any defenses to removal. *Id*. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Id*. (cited source omitted). "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id*. (quoted source omitted).

Petitioner argues this factor favors her. Petitioner asserts that she has filed a good-faith appeal of the denial of her and her husband's asylum application with the BIA, arguing that the IJ erred in failing to find past or future persecution. (Dkt. # 1 at 21.) Petitioner notes that an IJ already granted her husband asylum once, suggesting it is therefore more likely the issues on appeal are substantive and have a high chance of success. (*See id.*) Petitioner argues, in the alternative, that the Court should find this factor neutral if it lacks sufficient information to determine whether her appeal is non-frivolous and whether she is likely to ultimately prevail. (*Id.*)

Respondents present the flip-side of Petitioner's argument, noting that though Petitioner and her husband were initially granted relief, the BIA reversed the grant of relief on appeal and an IJ ultimately denied the asylum claim and ordered Petitioner and her husband removed. (Dkt. # 6 at 6.) Respondents argue that this history suggests Petitioner's immigration case is likely to culminate in a final order of removal. (*Id.*)

Though it appears Respondents have the better of the arguments here, the Court lacks sufficient information to conclude that this factor favors either side and, thus, finds the sixth factor is neutral.

### 7. *Weighing the Factors*

In sum, two factors weigh heavily in favor of Petitioner, including length of detention, the most important factor, and conditions of detention. Two additional factors weigh slightly in favor of Petitioner (duration of future detention and delays caused by the government), and two factors are neutral (delays caused by Petitioner and likelihood that removal proceedings will result in final order of removal). No factors weigh in Respondents' favor. The Court therefore concludes that the *Banda* test, on balance, favors Petitioner, that her continued detention under § 1225(b) has become unreasonable, and that due process requires she be provided a bond hearing. *See, e.g.*, *Banda*, 385 F. Supp. 3d at 1120 (finding same where four factors weighed in petitioner's favor and two were neutral).

### C. Relief

Having found Petitioner's continued detention unreasonable, the Court turns to the relief requested. Petitioner requests that the Court issue a writ of habeas corpus ordering Respondents to release her immediately. (Dkt. # 1 at 25.) Petitioner requests, in the alternative, that this Court conduct an individualized hearing or that it order a hearing be held before an immigration judge within seven days at which the government bears the burden of proof under a clear and convincing evidence standard. (*Id.*) Petitioner appears to further request that, if the government fails to meet its burden, this Court should order that Petitioner's financial circumstances and alternative release conditions be considered. (*Id.*) Finally, Petitioner seeks an award of attorney's fees and costs. (*Id.* at 26.)

The Court declines to Order Petitioner's immediate release but, consistent with the practice of this District, will order a bond hearing be held before an IJ within fourteen days of this Order. *See, e.g.*, *Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10.

Also, as this Court has previously recognized, Respondents are properly held to a clear and convincing standard of proof at that hearing, *see Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), and, if they fail to meet that burden, Petitioner's financial circumstances and alternative release conditions must be considered, *see, e.g., Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10. As to Petitioner's request for attorney's fees and costs, Petitioner is advised the request must be set forth in a fee petition pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

### III. CONCLUSION

(1) Based on the foregoing, this Court hereby FINDS and ORDERS as follows:

(2) Petitioner's petition for writ of habeas corpus (Dkt. 1) is GRANTED;

(3) Within **fourteen (14) days** of the date of this Order, Respondents shall provide Petitioner an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011); and

(4) Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

DATED this 6th day of March, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge